# IN THE COURT OF APPEALS OF IOWA

No. 24-1193
Filed October 2, 2024

**IN THE INTEREST OF G.B.,**
**Minor Child,**

**E.V., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, Judge.

A mother appeals the termination of her parental rights, arguing her misfiled notice of appeal does not deprive this court of jurisdiction and challenging whether a statutory exception under Iowa Code section 232.116(3) should have precluded termination. **AFFIRMED.**

Alexander S. Momany of Howes Law Firm, PC, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Julie F. Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Schumacher, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

A mother's parental rights to her two children—a daughter and a son—were terminated based on ongoing substance use. While the mother at first engaged in services, she ultimately consented to terminating her rights to her son and retreated from further testing or treatment. The State then moved to terminate the mother's rights to her daughter under Iowa Code section 232.116(1)(g) (2024). The juvenile court agreed, finding the mother was unwilling or unable to participate in further treatment and another period of rehabilitation would be futile. And because termination served the daughter's best interest and no statutory exception was appropriate, the court terminated the mother's parental rights.

The mother then tried to appeal but filed her notice of appeal in the wrong case. After our supreme court raised the error, the mother acted quickly—filing a late notice of appeal in the correct case and still filing her petition on appeal within fifteen days from the errant notice of appeal. The State responded within its fifteen-day deadline, and the appeal was ultimately submitted for our consideration no later than it would have been had the mother's notice of appeal been timely filed.

To start, we agree with the parties that we have appellate jurisdiction. This is a permissible delayed appeal because the mother intended to timely appeal, she was blameless for her counsel's filing misstep, and the delayed notice of appeal did not delay the rest of the appellate process at all. But on the merits, we disagree with the mother's sole argument that the juvenile court should have applied a statutory exception to termination because the daughter remained in her father's custody. The mother's persistent substance use poses a danger to the daughter, and the daughter is best served by permanency in her home. So we affirm.

## I.    Factual Background and Proceedings

Two children—an eight-year-old daughter and a three-year-old son—came to the attention of the department of health and human services ("HHS") in the summer of 2023 after their mother tested positive for methamphetamine. The daughter was in her father's physical care and had only sporadic visitation with the mother. The son, however, was from another relationship and was in the mother's care. He also tested positive for methamphetamine. Both children were adjudicated as children in need of assistance ("CINA") in August, resulting in the mother losing visitation with the daughter and HHS taking custody of the son.

While the CINA proceedings were pending, the mother struggled to remain sober. After completing treatment in December 2023, she relapsed about a week later. And she tested positive for methamphetamine again in late January 2024.

In February, the mother consented to terminating her parental rights to her son. As a result, the State moved to waive reasonable efforts to reunify the mother with the daughter. *See generally* Iowa Code § 232.57(2)(c) (authorizing courts to waive reasonable-efforts requirement in "aggravated circumstances," including when a "parent's parental rights have been terminated under section 232.116 with respect to another child who is a member of the same family, and there is clear and convincing evidence to show that the offer or receipt of services would not be likely within a reasonable period of time to correct the conditions which led to the child's removal"). The court granted the request, noting the mother "has not been able to demonstrate any extended period of sobriety" and thus it was "unlikely that the provision of additional services over additional time will alter the outcome."

Five days later, the State moved to terminate the mother's parental rights to her daughter. The guardian ad litem supported termination, opining the daughter "is very bonded with her father," "does not want to have visits with her mother," and "does not feel any closeness or other indications of a bond with her mother." Indeed, the mother seldom exercised her visitation rights and never cared for the daughter for extended time periods, and the daughter does not call her "mom." The mother also stopped participating in drug testing and could show no meaningful span of sobriety. So the guardian ad litem felt any contact with the mother would be unsafe for the daughter.

After a one-day hearing, the juvenile court terminated the mother's parental rights on July 9. The court found the mother had "made little to no progress toward reunification since the case began. She continued to test positive for methamphetamine and then stopped testing altogether." Indeed, the mother "was in substantially the same, or even worse, position as she was in at the onset of the case." Because the daughter had been adjudicated as in need of assistance, the mother's rights to her son were previously terminated, the mother was unwilling or unable to participate in corrective services, and another period of rehabilitation would be futile, the State carried its burden to terminate the mother's rights under Iowa Code section 232.116(1)(g). And the court further found termination best served the daughter and no statutory exceptions were appropriate.

Fifteen days later, the mother filed a notice of appeal stating she was appealing "from the Order re: Termination of the Parent/Child Relationship entered on July 9, 2024." But she mistakenly filed her notice in the CINA action and with the CINA case number rather than in the termination action with the termination

case number.[1]  *See* Iowa R. App. P. 6.101(1)(a) (requiring notice of appeal to be "filed in the district court and an informational copy with the supreme court").  Still, the appeal started down the tracks—the appellate proceeding was docketed, transcript was ordered, and the attorney general appeared to represent the State.

Our supreme court noticed the filing error and asked the mother to address whether the error deprived the appellate courts of jurisdiction.  The mother acted quickly—fifteen days after her errant notice of appeal, she filed a corrected notice of appeal in the termination case and her petition on appeal in the appellate case.  So while her notice of appeal was technically fifteen days late, her petition on appeal was functionally filed on time.  And the State filed its response fifteen days later.  The same day, the supreme court ordered the jurisdictional issue to be considered with the appeal.  The next business day, the mother's appeal was transferred to our court and submitted for our consideration without oral argument.

## II.     Appellate Jurisdiction: Delayed Appeal

We must first consider our jurisdiction over this appeal.  Parents appealing from an order terminating their parental rights must file a notice of appeal "in the district court and an informational copy with the supreme court within 15 days after the filing of the order or judgment."  Iowa R. App. P. 6.101(1)(a); *see also* Iowa Code § 602.7101(1) (providing that "[t]he juvenile court is within the district court.").

---

[1] The mother's counsel explained that he made this error because the juvenile court's termination order, while filed in the correct case, listed the CINA case number in the caption rather than the termination case number and referred to the CINA case by the termination case number in the text of the order.  In its response to the petition on appeal, the State notes a nunc pro tunc order by the district court may be appropriate to address this caption issue.  We take no position on the propriety of such an order and do not foreclose either party from seeking that relief in the district court.

Failure to comply generally deprives appellate courts of jurisdiction over the appeal. *See In re W.M.*, 957 N.W.2d 305, 316 (Iowa 2021). This expedited timeline reflects our state's policy to achieve permanency and forestall children languishing "in a state of limbo while the wheels of justice grind through the appeal process." *In re A.B.*, 957 N.W.2d 280, 291 (Iowa 2021). At the same time, parents have constitutionally protected liberty interests in "the care, custody, and control" of their children. *Id.* (cleaned up). So we apply our appellate procedures with these constitutional protections and the unique termination-of-parental-rights context in mind.

The tension between strictly enforcing expedited deadlines and a parent's right to appellate recourse is perhaps most pronounced when "an attorney fails to timely file the notice of appeal or timely complete the petition on appeal." *Id.* at 292. There, dismissing the errant appeal forecloses a parent's ability to obtain relief and, unlike our criminal system, there is no equivalent to postconviction relief for parents whose rights were wrongly terminated. *Id.* To resolve this constitutional tension, our supreme court has authorized a narrow path for parents to pursue delayed appeals. *Id.*

Delayed appeals from orders terminating parental rights are permitted only when a "parent clearly intended to appeal and the failure to timely perfect the appeal was outside of the parent's control." *Id.* And the resulting delay from an untimely appeal must be "no more than negligible" to prevent defeating the core purpose of the expedited deadlines. *Id.* at 292; *see also In re W.T.*, 967 N.W.2d 315, 319 (Iowa 2021) (explaining the negligible-delay requirement protects "the strong countervailing interests" of permanency and finality in termination cases).

Here, the mother's notice of appeal was filed in the termination action fifteen days late. But the peculiar record here convinces us that the mother intended to appeal and is blameless for the filing error. Indeed, the mother's counsel filed the notice of appeal unequivocally stating the intent to appeal the termination order and including the mother's signature within the fifteen-day deadline—just in the wrong case. *See W.T.*, 967 N.W.2d at 319–21 (explaining "there is no need to show extenuating circumstances to support a delayed appeal when the attorney is at fault for filing a late notice of appeal" because "the reason counsel failed to file a timely notice of appeal is irrelevant to our reasoning in allowing the appeal to go forward"). So the first two elements are satisfied and we next consider whether the error impermissibly delayed the appellate process. *See W.M.*, 957 N.W.2d at 316.

Under our expedited scheme, a termination appeal progresses in three, fifteen-day stages. First, a parent has fifteen days to file a notice of appeal. Iowa R. App. P. 6.101(1)(a). Second, the parent's petition on appeal is due fifteen days after the notice of appeal is filed. Iowa R. App. P. 6.201(1)(b). And third, the State's response, if any, is due fifteen days after the petition is filed. Iowa R. App. P. 6.202(2). We thus expect a parent's appeal to be ready for appellate review no later than forty-five days after the juvenile court's termination order.

The mother started this appeal on July 24 by erroneously filing the notice of appeal in the CINA action. But the mother still filed her petition on appeal fifteen days later, on August 8—the same day she filed the late notice of appeal in the termination action and the same day the petition would have been due if the notice had been timely filed in the correct case. The State responded to the petition

fifteen days later, on August 23—no later than it would have been required with a timely notice. Our supreme court raised the jurisdictional issue sua sponte while this process was ongoing and without slowing it down. And the same day that the State filed its response to the petition—a Friday—the supreme court ordered the jurisdictional issue be submitted with the appeal. The following Monday, the appeal was transferred to our court and immediately submitted to this panel for our consideration without oral argument.

Reviewing this timeline, the mother's delayed notice of appeal did not prolong the appellate process. *See W.M.*, 957 N.W.2d at 316–17 (finding no delay in the appellate process from an untimely notice when the petition on appeal was still filed fifteen days from when the notice should have been filed). Indeed, despite the mother's filing error, the appellate train kept moving down its express track without a single day's delay. So even with the extra jurisdictional statement, the mother's case was ready for consideration by our court forty-five days after the juvenile court's order. And so, under the governing precedents particular to parental-rights appeals, we have jurisdiction to proceed to the merits. *See id.*

### III.    Exceptions to Termination under Iowa Code section 232.116(3)

Terminating parental rights follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). The State must first prove that a statutory ground for termination exists. *Id.* Next, the State must show that termination is in the child's best interest. *Id.* And third, the parent bears the burden to show whether a permissive exception should preclude termination. *Id.* We review each of these steps de novo, giving appropriate weight to the juvenile court's preferred fact-finding position. *A.B.*, 957 N.W.2d at 293.

The mother only challenges the third step—whether the court should have applied a statutory exception to deny termination. We thus do not disturb the court's conclusions that the State carried its burden to show clear and convincing evidence that the mother's parental rights should be terminated under Iowa Code section 232.116(1)(g) and that termination is in the daughter's best interest.

The mother argues the court should have forgone termination because "[a] relative has legal custody" of the daughter. Iowa Code § 232.116(3)(a). This exception is permissive, so even if a family member has custody, a court may still order termination when doing so would serve the child's best interest. *In re A.S.*, 906 N.W.2d 467, 476–77 (Iowa 2018). And we agree with the juvenile court that although the daughter remains in her father's custody, termination is appropriate.

The daughter has endured significant instability with the mother—multiple CINA actions, continued substance use, and sporadic visitations. In light of the mother's retreat from services leading up to the termination hearing, we see no benefit to the daughter to delaying permanency in the hopes that the mother will one day make progress toward sobriety. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014). Indeed, the "defining elements" of our best-interest inquiry is the daughter's safety and "her need for a permanent home." *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring). Both of these elements are present here—the mother's substance use poses a danger to her daughter and the daughter deserves to be settled in her home after years of instability. Thus, the juvenile court appropriately declined to apply the permissive exception under section 232.116(3)(a), and we affirm the termination of the mother's parental rights.

**AFFIRMED.**